GEORGE H. AND BETTY A. JONES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jones v. Commissioner
Docket No. 4357-88
United States Tax Court
T.C. Memo 1989-616; 1989 Tax Ct. Memo LEXIS 616; 58 T.C.M. (CCH) 689; T.C.M. (RIA) 89616; November 14, 1989
John C. Klotsche,for the petitioners. James F. Prothro, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
1981
$  7,355
$   368 *
1982
37,513
1,876 *
1983
37,031
1,852 *
The issues for decision are: (1) whether petitioners erroneously deducted certain expenses of living abroad in 1981; (2) whether petitioners erroneously excluded foreign earned income and housing cost amounts in 1982 and 1983, and, if so, whether they are entitled to an additional foreign tax credit for each of those years; (3) whether petitioners improperly failed to report *618 as income certain employer allowances in 1981; (4) whether petitioners improperly failed to report as income a State of Alaska Permanent Fund distribution in 1982; and (5) whether petitioners are subject to the section 6653(a)(1) and 6653(a)(2) additions to tax for 1981, 1982 and 1983. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners, George H. and Betty A. Jones, resided in Carrollton, Texas, when they filed the petition in this case. Their timely filed joint Federal income tax returns for calendar years 1981, 1982, and 1983 employed the cash receipts and disbursements method of accounting. George H. Jones (hereinafter petitioner) is a U.S. citizen who was employed as an airline pilot during the years at issue. In 1971 he entered into an employment agreement with International Air Service Company, Ltd. (IASCO), a California corporation in the business of furnishing flight crew personnel to aircraft operators. By the terms of that agreement, and pursuant to a contract between IASCO and Japanese Air Lines Company, Ltd. (JAL), petitioner was *619 assigned to JAL, flying out of its Tokyo, Japan base. Petitioner served with JAL, based in Japan, through March 1972, and between January 1973 and March 1974. From March 1974 until March 1980, he worked out of JAL's Anchorage, Alaska base. Beginning in 1980, and continuing through the years at issue, petitioner once again served with JAL, working out of its Tokyo base. During each of the years 1981, 1982 and 1983, petitioner spent less than 165 nights in Japan, staying at various rooms in the Hotel Nikko Narita, approximately two miles from his base airport. He paid a daily rate at the hotel, checked in and out in accordance with his schedule, and left his personal belongings in storage at the hotel when away. Petitioner paid both Japanese [2] and U.S. Federal income taxes for the years at issue. He held a Japanese multi-entry visa, as well as driver licenses issued by the State of Alaska and Japan. He owned no car in Japan, but occasionally rented; two cars in the United States were co-titled in his name. *620 During this period, petitioner maintained no bank account in Japan and held no Japanese-based credit cards. He did maintain joint bank accounts with his wife in Anchorage, Alaska, and San Antonio, Texas, and held U.S.-based credit cards. His paychecks from IASCO were directly deposited in the San Antonio account. During the years at issue, petitioners co-owned a townhouse in Anchorage, and built and subsequently rented out a house in San Antonio. Although he participated in certain recreational activities in Japan and was friendly with a group of co-workers of IASCO at the hotel, petitioner was not integrated into the Japanese community. Petitioner was registered to vote in the State of Alaska and voted absentee in United States elections. During 1981, 1982, and 1983, petitioner's wife and children lived in the United States. Mrs. Jones resided at petitioners' townhouse in Anchorage, Alaska, as did petitioners' youngest daughter, until attending college in Texas. On their 1981 joint Federal income tax return petitioners claimed a deduction of $ 5,590 under section 913, attributable to certain expenses of living abroad. On their 1982 and 1983 joint Federal income tax returns *621 petitioners claimed exclusions of $ 76,050 and $ 81,272, respectively, under section 911, of foreign earned income and housing cost amounts. In this notice of deficiency respondent disallowed petitioners' entire 1981 section 913 deduction, their entire 1982 section 911 exclusion and $ 80,886 of petitioners' 1983 section 911 exclusion. Petitioners also claimed foreign tax credits in 1982 and 1983 of $ 1,230 and $ 2,923, respectively. In computing these amounts, petitioners reduced their claimed foreign taxes paid of $ 18,535 in 1982 and $ 24,293 in 1983 to the extent these taxes were attributable to income petitioners had already excluded under section 911. When respondent disallowed petitioners' section 911 amounts for 1982 and 1983, he did not correspondingly adjust their foreign tax credit for those years. In 1981 petitioner received $ 7,624 in per diem allowances for expenses incurred while on duty. He reported this amount on respondent's Form 2106, filed with petitioners' 1981 joint Federal income tax return. Pursuant to the structure of that form, petitioners netted the reported $ 7,624 against their total claimed employee business expenses of $ 8,145 and then deducted *622 the difference of $ 521 on respondent's Form 1040. In his notice of deficiency respondent determined that petitioners had improperly failed to report as income $ 7,624 received from his employer for personal expenses. In 1982 petitioners each received a $ 1,000 State of Alaska Permanent Fund distribution. Petitioners kept one of these payments and returned the other to the State of Alaska. On their 1982 joint Federal income tax return petitioners attached a statement that they had received a $ 1,000 State of Alaska Permanent Fund distribution which they were excluding from gross income pursuant to section 102. No mention was made of the second payment on the return. In his notice of deficiency respondent determined that petitioners had improperly failed to report as income $ 1,000 received from the State of Alaska in 1982. OPINION Issues (1), (2): Bona Fide Residency Abroad
On their 1981 joint Federal income tax return petitioners claimed a deduction under section 913, attributable to certain expenses of living abroad; on their 1982 and 1983 returns petitioners claimed exclusions under section 911, of foreign earned income and housing cost amounts. Both the 1981 *623 deduction and the 1982 and 1983 exclusions were claimed based on petitioner's presence in Japan during those years. Although the Code's scheme for taxing U.S. citizens living abroad was changed for taxable years beginning after December 31, 1981, the applicable sections 913 and 911 have common elements. Requisite to qualification under either section, inter alia, is the satisfaction of either a foreign presence test or the establishment of bona fide residency abroad. Secs. 913(a), 911(d)(1). Petitioners have conceded that petitioner did not satisfy the applicable foreign presence tests. They must thus show that he satisfied the applicable bona fide residency tests to prove that respondent's disallowance of these items was erroneous. Rule 142(a). The bona fide residency tests of sections 911 and 913 are the same. Secs. 913(a)(1), 911(d)(1)(A); H. Rept. No. 97-215 (Conf.) (1981), 1981-2 C.B. 481, 485. The term "bona fide resident" has been described as "an elusive expression and one so peculiarly related to the facts in any given case 'that each new case must be decided on the basis of its own unique attendant circumstances.'" Sochurek v. Commissioner, 300 F.2d 34, 37-38 (7th Cir. 1962), *624 revg. 36 T.C. 131 (1961), quoting in part Nelson v. Commissioner, 30 T.C. 1151, 1153 (1958). Although it is true that an airline pilot, commensurate with the nature of his employment, cannot be expected to spend as much time at and develop the same ties to his place of assignment as a nonmobile employee, neither is a pilot automatically deemed a bona fide resident of the country of his base airport. We thus conclude, having considered all the facts of this case, including petitioner's employment relationship, his housing arrangement, the residence of his family and his relative ties to the U.S. and Japanese communities, that petitioner has not proved that he was a bona fide resident of Japan during 1981, 1982, and 1983. We sustain respondent. Petitioners' disallowed section 911 exemptions for 1982 and 1983 make their foreign tax credit for those years relevant to this decision. As stated, petitioners computed those credits by, inter alia, reducing their claimed foreign taxes paid to the extent these taxes were attributable to income petitioners had already excluded under section 911. See sec. 911(d)(6). As respondent agrees, these credits must *625 now be recomputed upwards in light of the disallowed section 911 amounts. We hold accordingly. Issue (3): Per Diem Allowances
In his notice of deficiency, under the heading "unreported income reimbursements," respondent informed petitioners that "reimbursements and allowances you receive from your employer for personal expenses are includable in income." In his trial memorandum, submitted about three weeks prior to trial, respondent reiterated this income inclusion issue, and raised for the first time the issue of substantiation of the deduction of these expenses under section 274. There is substantial authority for the notion that a statutory notice is to be broadly construed. See Munro v. Commissioner, 92 T.C. 71 (1989). However, there is equal authority for the proposition that a petitioner cannot be unduly surprised by respondent's raising of a new issue at a time which does not afford petitioner adequate time to prepare that issue. See Johnsen v. Commissioner, 83 T.C. 103, 120-121 (1984), revd. on another issue 794 F.2d 1157 (6th Cir. 1986); Fox Chevrolet, Inc. v. Commissioner, 76 T.C. 708, 734-735 (1981). *626 Although it is true that a disallowed deduction must be included in income, it would be unreasonable to require petitioners to have made such an inferential leap in construing respondent's notice of deficiency. We thus find the inclusion of income under section 61 and the substantiation of a deduction under section 274 to be two distinct issues. With regard to income inclusion, petitioners timely reported the per diem allowances in the manner specified by respondent's forms. The sum effect of petitioners' netting these allowances against their total employee business expense and then deducting the difference was no different than if they had included the allowances in gross income and then deducted the entire business expense. Accordingly, we hold that petitioners, in effect, did not fail to report these amounts as income in 1981. Concerning the question of substantiation, petitioners learned of this issue approximately three weeks prior to trial. We find that petitioners did not have sufficient time to prepare this issue, especially in light of the substantial evidentiary requirements of section 274 and the regulations thereunder. See sec. 274(d); sec. 1.274-5, Income Tax *627 Regs. Accordingly, we hold for petitioners on this issue. Issue (4): State of Alaska Permanent Fund Distributions
In his notice of deficiency respondent determined that petitioners improperly failed to report as income in 1982 a $ 1,000 State of Alaska Permanent Fund distribution. As the facts developed at trial reveal, petitioners in fact received two $ 1,000 State of Alaska payments in that year. Although respondent's notice of deficiency is unclear as to which, if any, particular payment it addressed, this fact is irrelevant in light of the amount of the deficiency determined: since the inclusion of only one $ 1,000 payment was properly raised, that is the limit of the deficiency we can determine regarding this issue. Sec. 6214(a); Estate of Petscheck v. Commissioner, 81 T.C. 260, 271-272 (1983), affd. on another issue 738 F.2d 67 (2d Cir. 1984). State of Alaska Permanent Fund payments are includable in gross income. Greisen v. United States, 831 F.2d 916 (9th Cir. 1987). Petitioners received at least one $ 1,000 payment which should have been reported as income. Accordingly, we hold for respondent on this issue. *628 Issue (5): Additions to Tax Under Section 6653(a)(1) and 6653(a)(2)
Having considered all the facts and circumstances of this case, we find that petitioners' conduct regarding their 1981, 1982, and 1983 joint Federal Income tax returns was not negligent within the meaning of section 6653(a). See Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners had the burden of proof on this issue, and they have carried it. Rule 142(a). Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code, as in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. * 50 percent of the interest due on the part of the underpayment attributable to negligence.↩
2. Petitioner paid Japanese income tax for 1981, 1982 and 1983 as follows: ↩
Year of Payment
Year Tax Incurred
1981
1982
1983
1984
1981
Y434,400
Y3,860,800
1982
2,863,400
Y2,591,600
1983
3,636,600
Y2,509,400